IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAPHAEL TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-CV-2837-MAB |
| | ) |
| ROGER SULLIVAN, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Roger Sullivan (Doc. 34). To date, Plaintiff Raphael Taylor has not filed a response to the motion. Despite the lack of opposition from Plaintiff, there are evident issues of fact that preclude the Court from awarding summary judgment to Defendant, and Defendant's motion is therefore denied.

## BACKGROUND

Plaintiff Raphael Taylor, an inmate of the Illinois Department of Corrections, brought this civil action pursuant to 42 U.S.C. § 1983 alleging that he sought protective custody at Shawnee Correctional Center and "feared for his life[,] because inmates and correctional officers were trying to force [him] to join a homosexual cult." (Doc. 18; *see also* Doc. 25). The pertinent factual allegations are that Plaintiff was housed at Shawnee Correctional Center from April 14, 2022, through April 27, 2023 (Doc. 34-1). Plaintiff alleges that on or around June 14, 2022, Plaintiff requested protective custody because

inmates and officers were actively trying to force him to join a homosexual cult (Doc. 18, p. 5; *see also* Doc. 25, p. 3). In order to join the cult, Plaintiff would have to have sex with a male officer or inmate or be photographed with an officer or inmate's penis in his mouth (Doc. 18, p. 7). According to Plaintiff, he spoke with Internal Affairs and was informed that he was being placed in protective custody (Doc. 18, pp. 5–6). Plaintiff was kept on protective custody status from June 14, 2022, through November 10, 2022 (*Id.*).

Once out of protective custody, Plaintiff alleges that on December 8, 2022, Defendant Roger Sullivan, who is a correctional officer at Shawnee, another officer, and an inmate went to his cell "like they were trying to scare me." (Doc. 18, p. 7). But "after Sullivan saw that I wasn't afraid of them he closed [the] cell" and then began harassing Plaintiff "everyday after" (*Id.*). For example, Defendant Sullivan entered his cell and ripped up his clothes, broke his tablet, and stole some of his court documents (although Plaintiff did not learn Sullivan was responsible until later) (*Id.* at pp. 7–8). On another occasion, Plaintiff alleges that Defendant Sullivan purposely made him 30 minutes late for a call pass to the law library (*Id.* at p. 8). And Plaintiff alleges that Sullivan and some other officers took him to segregation in December 2022 under false pretenses in order to cover up Sullivan's actions and scare him into not "fil[ing] charges on . . . Sullivan" (*Id.*).

Following a threshold review of Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A, he was permitted to proceed on an Eighth Amendment claim for cruel and unusual punishment against Defendant Sullivan for attempting to force Plaintiff to engage in homosexual behavior, to pose for inappropriate photographs, and/or to join a homosexual cult or religion (Doc. 25).

On March 18, 2024, Defendant Sullivan filed a motion for summary judgment on the issue of exhaustion (Doc. 34). He acknowledges there are grievances that specifically allege some type of wrongdoing on his part but argues they are insufficient to exhaust Plaintiff's claims against him for one reason or another (Doc. 34, p. 15).

Defendant Sullivan initially neglected to provide Plaintiff with the requisite Rule 56 Notice advising him of the consequences of failing to respond to the motions for summary judgment and the necessity of supporting his response with affidavits or other documentary evidence, but Defendant did so after prompting from the Court (Doc. 36; *see also* Doc. 35). *See Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). Shortly thereafter, Plaintiff filed a motion indicating that he had yet to receive a copy of the Merit Review Order (which had been entered in October 2023 (Doc. 25)) and questioning the authority of the Illinois Attorney General's Office to represent Defendant Sullivan (Doc. 37). Plaintiff's deadline to respond to Defendant's motion for summary judgment on the issue of exhaustion was temporarily stayed and a hearing was set to sort through whether Plaintiff had received any of the documents filed in the case since the Merit Review Order was issued in October 2023 (Doc. 39). Following the hearing, the Clerk of Court mailed Plaintiff a copy of the Merit Review Order, as well as Defendant's motion for summary judgment with all of the supporting exhibits and the Rule 56 Notice (Doc. 41).

Plaintiff's deadline to respond to the motion for summary judgment was reset to September 6, 2024 (Doc. 41). That deadline has come and gone, and Plaintiff has yet to file a response or a motion seeking additional time to do so.

## LEGAL STANDARD

Summary judgment is proper if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court's task is to view the record and draw all reasonable inferences in the light most favorable to the non-moving party and decide if there is a genuine material dispute of fact that requires a trial. *Stewart*, 14 F.4th at 760; *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014). Where, as here, "a nonmovant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment was proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286

F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

As an inmate in the IDOC, Plaintiff was required to follow the three-step grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). Inmates first submit their grievance to their counselor. *Id.* at § 504.810(a).[1] After receiving the counselor's response, they must submit the grievance to the grievance officer, who tenders a recommendation to the warden, who then provides the inmate with a written decision. *Id.* at § 504.830(e). *Id.* If the inmate is unsatisfied with the warden's decision, the inmate can appeal to the Administrative Review Board ("ARB") for a final determination by the Director of the IDOC. *Id.* at § 504.850(a), (d), (e).

An inmate may also request that a grievance be handled as an emergency by submitting the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840. If the warden finds that an emergency exists, then the grievance will be handled on an expedited basis. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified and must resubmit the grievance through the standard grievance process." *Id.*

## DISCUSSION

In this case, Plaintiff failure to respond to Defendants' motions for summary judgment is deemed an admission that Defendants' version of the facts is true. SDIL-LR

---

[1] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE §§ 504.810, 504.830 (2017).

56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."). The Court thus credits Defendant's uncontroverted facts so long as they are properly supported by evidence in the record. *See* FED. R. CIV. P. 56(e)(2); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted). Defendant's facts are also supplemented by additional facts the Court came across in its review of the evidence that were relevant to the issue at hand.

The records demonstrate that Plaintiff was a prolific grievance writer (*see* Doc. 34-2 through 34-11). According to Defendant, Plaintiff submitted approximately two dozen grievances in 2022 and 2023 that are "tangentially" related to his claims in this case (Doc. 34, pp. 3–11). Of those grievances, Defendant claims there are four that specifically allege some type of wrongdoing on his part but are insufficient to exhaust Plaintiff's claims against him for one reason or another (Doc. 34, p. 15). After reviewing the evidence, however, the Court believes there is at least one additional grievance in which Plaintiff complained about conduct that he now claims Defendant Sullivan was responsible for. Each grievance will be discussed in turn below.

### A. Emergency Grievance #2023-1-32, dated December 28, 2023

According to Defendant, this is the first grievance that specifically mentions him (Doc. 34, pp. 9, 15; Doc. 34-2, pp. 61–63; Doc. 34-6, pp. 6–9). The evidence demonstrates, and Defendant concedes, this grievance went through every step of the grievance process before being denied on the merits by the ARB (*see* Doc. 34, p. 9; *see also* Doc. 34-6, pp. 6–9). The Court thus finds this grievance was fully exhausted. Defendant argues that this

grievance is nevertheless insufficient to exhaust Plaintiff's claim against him because it is "irrelevant," as "the issues considered in that grievance are not germane to the issues of Plaintiff's current suit" (Doc. 34, p. 15). The Court is not persuaded.

In this grievance, Plaintiff complained that Defendant Sullivan caused him to miss thirty minutes of law library "in retaliation for a lawsuit that [he] filed against I.D.O.C." (Doc. 34-6, pp. 8–9). This same incident is one of the many ways Plaintiff alleged in the complaint that Defendant harassed him (*see* Doc. 19, p. 8). Therefore, this grievance specifically relates to one of the events underlying Plaintiff's claim in this action.

### B.  Emergency Grievance #2023-1-31, dated December 30, 2022

This is the second grievance that specifically mentions Defendant Sullivan (Doc. 34, pp. 9–10, 15; *see* Doc. 34-2, pp. 31–34; Doc. 34-5, pp. 7–13). The evidence demonstrates, and Defendant acknowledges, this grievance went through every step of the grievance process before the ARB issued a decision on the merits (*see* Doc. 34, pp. 9–10; *see also* Doc. 34-5, pp. 7–13). The Court thus finds this grievance was fully exhausted. However, Defendant once again argues that this grievance is irrelevant (Doc. 34, p. 15). And once again, the Court is not persuaded.

In this grievance, Plaintiff complained about numerous things, including that an officer went in his cell and broke his tablet, cut up his clothing, and took his court documents (Doc. 34-5, pp. 12–13). He also complained that Defendant Sullivan and other officers took him to segregation even though he did not violate any IDOC rules (*Id.*). These are some of the very same ways that Plaintiff alleged in the complaint that Defendant harassed him (*see* Doc. 19, pp. 7–8). This grievance covers some of the events

underlying Plaintiff's claim in this action.

### C. Emergency Grievance #2023-2-62, dated February 2, 2023

This is the third grievance that specifically mentions Defendant Sullivan (Doc. 34, pp. 11, 15-16; *see* Doc. 34-2, pp. 43–44). In this grievance, Plaintiff alleged that he was released from restrictive housing on February 2, 2023, and Defendant Sullivan tried to put him in a cell with another inmate even though he told Sullivan that "it is in my file that I can not [sic] have a cellmate" and that he was "suspost [sic] to be in protective custody." (Doc. 34-2, pp. 43, 44). Plaintiff said Sullivan "became hostile" with him and eventually issued him an erroneous ticket for refusing housing (*Id.*).

The warden declined to process the grievance on an emergency basis (*see* Doc. 34-2, pp. 43, 44). According to Defendant, 'it does not appear" that Plaintiff re-submitted this grievance "to a grievance counselor" through the regular grievance process, thus implying the grievance is unexhausted (Doc. 34, pp. 11, 15 (citing Doc. 34-2, pp. 43–44)). However, the grievance plainly shows that after the warden deemed the grievance to be a non-emergency, the counselor responded to it (*see* Doc. 34-2, p. 43), which suggests Plaintiff did in fact resubmit the grievance through the regular grievance process. Additionally, the grievance officer's report to the aforementioned emergency grievance #2023-1-31 seems to indicate that it was also in response to six other grievances, including #2023-2-62 (*see* Doc. 34-5, p. 10). Indeed, the grievance officer's report addresses issues that were not contained within emergency grievance #2023-1-31 but were part of the other six grievances listed. The same goes for the ARB's response to grievance #2023-1-31 (*see* Doc. 34-5, p. 7). In particular, the ARB's response addresses Plaintiff's complaint

of "having a cellmate, wants PC," (Doc. 34-5, p. 7), which is never mentioned in emergency grievance #2023-1-31 but is one of the complaints in grievance #2023-2-62. For these reasons, the Court believes an issue of fact exists to whether this grievance was fully exhausted.

### D. Emergency Grievance #2023-2-98, dated February 10, 2023

This is the fourth grievance that specifically mentions Defendant Sullivan (Doc. 34, pp. 10–11, 16; *see* Doc. 34-2, pp. 11–14; Doc. 34-5, pp. 3–6). In this grievance, Plaintiff complains that he received a ticket in January 2023 and was given segregation and a month of C-grade "to keep me on the C-grade unit with Sargent Sullivan who keep making homosexual justs [sic] at me trying to for [sic] me to join a homosexual cult" (Doc. 34-5, p. 6). Plaintiff further alleged that "on February 3, 2023[,] Sargent Sullivan had another c/o write me a ticket because I told him that I'm not suspost [sic] to have a cell mate" (*Id.*).

The warden determined this grievance did not present and emergency, and Plaintiff resubmitted it back through the normal grievance process (*see* Doc. 34-5, p. 5). His counselor responded in late March 2023 and Plaintiff then sent the grievance on to the grievance officer (*see id.*). Before he got a response, however, Plaintiff was transferred out of Shawnee and sent to Lawrence on April 27, 2023 (Doc. 34-1, p. 1). The grievance officer reviewed the grievance on June 30, 2023, approximately three months after receiving it (Doc. 34-5, p. 4). The warden then denied and/or mooted the grievance on July 12, 2023, because "issues regarding PREA allegations have been addressed and individual is no longer at Shawnee CC" (*Id.*). Plaintiff appealed to the ARB, where his

appeal was received on August 17, 2023 (*Id.* at p. 3). The ARB returned the grievance without further redress because it was untimely as it was received "30 days past date of Chief Administrative Officer's decision." (*Id.*).

Defendant argues that Plaintiff's untimely appeal to the ARB means that this grievance was not fully exhausted (Doc. 34, pp. 10–11, 16). Based on the record, however, the Court finds that an issue of fact exists as to whether Plaintiff's appeal was indeed untimely. The record indicates that the grievance office at Plaintiff's new facility (Lawrence) received the decision from the warden at Shawnee on August 11, 2023, which is exactly 30 days after the decision was issued and the deadline for Plaintiff to appeal to the ARB (Doc. 34-5, p. 4). 20 ILL. ADMIN. CODE § 504.850(a) ("The appeal must be received by the Administrative Review Board within 30 days after the date of the [warden's] decision.") This begs the question as to whether the warden's decision was provided to Plaintiff in time for him to place his appeal in the mail to the ARB and for the ARB to receive it before the 30 day-deadline elapsed. As such, there is an issue of fact as to whether Plaintiff's appeal was properly denied as untimely by the ARB.

**E. Other Grievances**

The Court notes there is at least one other grievance mentioned by Defendant in his brief that directly relates to Plaintiff's allegations in this case: emergency grievance #2022-12-189, dated December 20, 2022 (Doc. 34-2, pp. 53–56). In this grievance, Plaintiff complained that an officer or inmate, whose identity he did not know, went into his cell and broke his tablet (Doc. 34-2, pp. 53–56). Plaintiff later alleged in his complaint that it was Defendant Sullivan. Plaintiff initially said in the grievance that his tablet was broken

"in retaliation for a lawsuit that [he] filed against IDOC, but he later said it was because he did not "what [sic] to join there [sic] homosexual cult" (*Id.*).

Defendant seemed to think this grievance was unexhausted (*see* Doc. 34, p. 9 ("[T]he section for an individual to appeal to the ARB is left incomplete")), however, the Court, in its own review of the records, came across Plaintiff's appeal to the ARB (*see* Doc. 34-6, pp. 2–5). The ARB denied the grievance on the merits (*see id.*), meaning it was fully exhausted.

To the extent that Defendant did not consider whether this grievance was sufficient to exhaust any aspect of Plaintiff's claim because Defendant was not expressly named in it, the Court notes there are situations in which the failure to name the target of a grievance is excused, particularly when the inmate expressly indicates that they do not know the who was responsible for the conduct at issue. *See* 20 ILL. ADMIN. CODE § 504.810(c) (requiring grievance to include "the name of each person who is the subject of or who is otherwise involved in the complaint" but explaining "[t]his provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible."); *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) (explaining that "the identification requirement in the first sentence [of the regulation] is softened by the second sentence, which clarifies that prisoners need identify names only to the extent practicable.").

Based on the various factual issues identified in this Order, summary judgment for Defendant is inappropriate and must be denied. Resolving these issues will require

an evidentiary hearing. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). If Defendant wants to continue to pursue the affirmative defense of failure to exhaust administrative remedies, he must request a *Pavey* hearing within 14 days of this Order. If no request is made, the Court will enter a scheduling order for discovery on the merits of this case. Alternatively, the parties may request that this case be referred for alternative dispute resolution.

**IT IS SO ORDERED.**

**DATED: March 5, 2025**

                                            **s/ Mark A. Beatty**
                                            **MARK A. BEATTY**
                                            **United States Magistrate Judge**